Good morning, Your Honors. May it please the Court, Christy Hughes from Federal Defenders. Oh, no one's ever told me before that they can't hear me. I'm telling you, so please keep it. Christy Hughes from Federal Defenders on behalf of Mr. Rodriguez. When the District Court considered whether Mr. Rodriguez was prejudiced because the government failed to prove that he was removable, the Court should have only considered the conviction documents that the government submitted to the IJ. That's because for removability, the government has the burden in Immigration Court to prove by clear and convincing evidence that Mr. Rodriguez had an aggravated felony and that he was removable. When the government in Immigration Court doesn't meet that burden and doesn't submit sufficient evidence to the IJ, then the alien can't be removed. The government can't come back now on a collateral attack and argue that Mr. Rodriguez wasn't prejudiced because the government could have proved the conviction in Immigration Court. They had their shot and they failed to meet their burden. And that burden in Immigration Court is what distinguishes this case and this situation where the question is not removable as charged or removed when he should not have been from the situation in the cases that the government cites in their briefs where the question is prejudice where the alien argues that he had a plausible claim to relief. What did we do about the fact that Mr. Rodriguez-Hernandez failed to appeal the deportation order? Well, again, the government has to prove by clear and convincing evidence that that waiver was considered an intelligent, meaning that Mr. Rodriguez understood what he was giving up and his right to appeal. And what we know from Lopez-Vasquez is that it's not what the immigration judge says at the hearing. It's whether or not the alien understood. And so if you look at the colloquy, all Mr. Rodriguez is doing is giving yes-no answers during that whole colloquy with the judge. And earlier during the colloquy about whether or not he objects to amending the NTA, he's, again, giving yes-no answers. And then it becomes clear that he doesn't actually understand what he's giving up. Well, excuse me, counsel. At the end of the colloquy, the immigration judge makes what appears to be a finding of fact. So what do we do with that? I mean, does that get any deference at all, or do we have to look at it and say, based on the totality of the record, that was not a reasonable finding of fact? What if any deference does that finding get? Well, the question of whether or not that was a valid waiver, this Court has to review de novo. That's a legal question. And so this Court has to determine whether or not the facts that are in the record establish this knowing waiver. This is kind of complicated, at least in my mind, so let me tell you exactly what my question is. Sure, if the colloquy is inadequate as a matter of law, it doesn't matter what the immigration judge found. I think you're right about that. But if we were to conclude that the issue is really what your client's state of mind was, in other words, not – if we were to say the colloquy on the cold record is fine, the question is, are we convinced to this clear and convincing standard that he actually didn't understand what he was doing – that he did understand what he was doing and therefore was knowing an intelligent waiver? In that respect, with regard to the state of mind of your client at the time of the colloquy, there is a finding of fact by the immigration judge. And my question is, is that entitled to any deference? Well, I think the immigration judge is actually making a legal conclusion. He says that you're knowingly, voluntarily, and intelligently waiving your opportunity for appeal. That's the standard for a valid waiver. So I don't know that I actually think that's a finding of fact. But he's there with your client, and he can observe him, and he can get the look and feel of the colloquy, and he's satisfied that your client knows what he's doing. If the colloquy is inadequate as a matter of law, then fine, then you win on this point. But if the colloquy is adequate, and the question is, well, if you look at it, it's not really clear that he understood, and there were some places where he appeared not to understand English and so forth, then it seems to me the observations of the IJ matter. And, again, I'm just trying to figure out, do we give any deference to those observations? Well, and I don't want to dodge Your Honor's question too much, but I do want to punt that a little bit to the government, because it is their burden to demonstrate by clear and convincing evidence that he did understand this waiver. And so I think that if you look at the evidence that they've proffered to bolster, I guess, any finding that the IJ found, it's just not sufficient. It's the two statements that the government claims Mr. Rodriguez wrote. And when you look at those statements, it's plain that Mr. Rodriguez didn't write those statements. It's the confession where he's using all these legal terms, and it's the declaration that he submitted with the motion to dismiss, that those declarations are prepared by counsel. We go over them with clients, but they're prepared by counsel. And you can tell that happened in this case because Mr. Rodriguez actually goes through and interlineates and then initials where he's changed facts. So that evidence, I don't think, satisfies the government's burden, even if you consider it with any findings that the immigration judge made. And, again, I think any findings – again, I don't think that's a factual finding. I think the judge is making a legal conclusion that this Court reviews de novo. But I think that any finding the judge did make has to be considered in light of the record as a whole, as Your Honor was saying, the totality of the circumstances. And there's plenty of evidence from the record. He didn't graduate from high school. He didn't – he tells the IJ I don't understand English that well. We know from the NTA that the Immigration Service gave him notice of the NTA in Spanish. So at some point the Immigration Service at least was on notice that English was not his best language. Didn't the judge ask him if he wanted to do the proceeding in English or Spanish? He does. He says I understand – What did your client say? Pardon? What did your client say? He says I speak a little bit of English and I'll take the proceeding in English. But, again, then as it goes on and it becomes clear to the IJ that Mr. Rodriguez doesn't seem to be understanding at least some of the legal words that are used, there's no indication there that the IJ ever said, you know, we have an interpreter sitting here. Why don't we have her help Mr. Rodriguez out? So I know – Well, the judge says he wants to do it in English. I mean, he may not understand legal terms. There are some legal terms I don't understand. But he says what language do you want? The guy says English. That's true. But, again, he asked for English. He's familiar with colloquial English. He has gone to school here. But he's not familiar, as you can tell by that whole object colloquy. He doesn't understand all the words that are being used. And when the IJ gets to the waiver, he's talking about whether or not harm can be cured, whether or not his legal residence will be taken away. I mean, these are terms that I don't know that someone who hasn't even graduated from high school can really appreciate in the manner that's required when the standard is a clear and convincing evidence to show that he understood. But he tells him that he, the IJ's determination on whether the modified categorical approach applied, he actually says, I could be wrong about this. Other people disagree with me about it. You could appeal this. And if you waive your right to appeal, you're not going to get to. Do you understand that? And your client says yes. So – and then there's a determination. Your client understands what's going on. So you can – and I don't mean to in any way be critical, but you can cherry pick and you can point to places where there appears to be a lack of understanding. But, I mean, I'd say most of the judges in the Ninth Circuit and most of the district judges in the Ninth Circuit have trouble with the modified categorical approach. And what the IJ says is, you know, this is an unsettled area of law, and if you don't appeal, you don't get to preserve your rights. I mean, he explains that in actually pretty plain English. So what do we do with that? Well, two responses, Your Honor. First, again, going back to Lopez-Vazquez, it's not what the IJ says. It's what the alien understands. In Lopez-Vazquez, there was no problem with what the IJ said. He gave a proper warning. He even gave a form in Spanish. And this Court still held there was an invalid waiver because we couldn't tell the alien understood. But second, after the IJ goes through and talks about, you know, there's a conflict in the law, he then says, I don't see any relief that's available here. You have a drug conviction. I don't see any relief. Mr. Lopez or Mr. Rodriguez may have heard that and then thought, I've already been in custody a month and a half at this point. He's in a very similar situation to Piarras-Gallan, where he just wants to get out of custody. That's why he asked twice, can I volunteer to be deported today? I just want to be deported. It's not clear that someone who's applied to be a citizen is a legal permanent resident, has citizen family members here, really appreciates what being deported means to him. I'll reserve the remainder of my time. Thank you. May it please the Court. Ms. Hughes, good morning. Hamilton Aronson for the United States. I'd like to begin where Ms. Hughes left off in addressing the question that Judge Wardlaw essentially, you know, directed us to this morning, which is the waiver. And, you know, I think that essentially what the defense is asking in this case, based on the adviso that was given, was to essentially create a bright line rule that anyone who is not represented by counsel cannot give a valid waiver. Because if you look at the adviso in this case, I think it's one of the most detailed, thorough, and compassionate advisos that you can have. And I work in the Southern District. I do 30 to 26 cases all the time. We see a lot of these. And I would submit to the Court that this is one of the most thorough and most detailed advisos that I've seen. You don't have to take my word for it. Obviously, this Court has jurisdiction over many border districts and deals with this issue quite a lot. And so I think that some of the key points of that adviso are that the defendant is advised on three separate occasions about the nature of his right to appeal and whether he wants to appeal and indicates that he doesn't. He's advised that the IJ could be mistaken and that the Board of Immigration Appeals might find that he's wrong about that aggravated felony. And then finally, he's advised that if the Board of Immigration Appeals determines that I'm wrong, you could stay in the United States. You might not be deported. And there's a very short portion at the end that captures this. I just want to review it for the Court quickly. The judge, on the other hand, if you choose to appeal, the Board could determine that I'm mistaken and that you are not deportable at all or that you should have some right to be allowed to remain in this country. Do you understand that?  Now that you know all that, sir, do you want to appeal? No, I don't. So I think that's a very, very – and that's just the end of what's – you know, there are ten questions before that. Touching on some of the specific points that might – Let me ask you a question, counsel. Is exhaustion by – to the BIA a jurisdictional prerequisite to this case? Yes. I think the Court has made clear that if the defendant does not exhaust his remedies, that the defendant can then not collaterally attack his 1326 charge, which is in effect what Mr. Rodriguez-Hernandez is doing in this case. But we concede that that bar does not apply if there's not a considered and intelligent waiver. And I think with regard to Judge Fogle's question about whether the IJ's findings of fact are entitled to any deference, I don't think there's any case law that expressly addresses what type of deference should be available in the context of applying that clear and convincing standard, which the government agrees is the right standard, to the IJ's findings of fact. But as a trial judge yourself, you know that, you know, any time there is a determination made by the actual trier of fact, who's able to see the witness, observe their mannerisms, determine, you know, the way that they're speaking to the court, they're certainly going to be in the best position to be able to evaluate that factual question. But we do agree that the standard is clear and convincing, and I think we've definitely met – So do you agree that you win or lose based on the exhaustion argument? Respectfully, no. I would disagree with that. You didn't argue that the documents in front of the IJ at the time were sufficient to satisfy the modified categorical approach. That's correct, and I think that gets to the second issue, which from the government's perspective comes down to, you know, whether or not in this situation where there's no dispute that the NTA alleged that this gentleman was removable as an aggravated felon, and there's really no dispute based on the documents that the defendant stipulated to that he committed that aggravated felony and the offense conduct that would qualify it as an aggravated felony, that there was not an error. And when the court is doing that prejudice analysis, what it really comes down to is we want to get it right. That's what the prejudice analysis comes down to. Based on the current state of the law, is what happened to the defendant correct? And I think that's what distinguishes Camacho-Lopez, which my colleague makes a lot of in her brief, with regard to whether or not there's some sort of different standard that applies with regard to removability as opposed to relief. But respectfully, in Camacho-Lopez, it was alleged that the defendant was deportable because of an aggravated felony that was gross vehicular manslaughter. And it was clear based on the current state of the law when he challenged his 1326 and specifically his deportation, that under Leocal, that could no longer be an aggravated felony because the mens rea was insufficient. So in Camacho, the defendant was not removable as charged, and therefore, of course, he was prejudiced. That's not the case in this situation. Mr. Rodriguez-Hernandez was removed as charged. The NTA said that he had an aggravated felony, which included the attempted theft offense provision, and in fact, he had that aggravated felony. And with regard to whether those documents, you know, Judge Wardlaw, you asked about those being in front of the IJ, I think this case is controlled by Almazan and Hernandez. And what those cases make clear is that when a defendant stipulates for the factual basis of his plea to anything, whether it's just a plea colloquy and the judge is asking questions, whether he says, I stipulate to the facts in the complaint, or I stipulate to the facts, as in this case, in the police report, the probation report, and the court file, that those then become the terms of the plea agreement. That's true, but they were not presented to the IJ, were they? Well, no, no. No, the immigration judge determined, and we now know incorrectly, that he had been convicted of a burglary offense or a crime of violence, which we know was not accurate. But I think, you know, under, well, a couple different points. With regard to the documents not being in front of the IJ, under Gonzalez-Valerio, it's clear that when the district court is evaluating that prejudice prong, it can look at documents that aren't in front of the IJ. Because, again, what we want to do is get it right. And in that case ---- But did the IJ get it wrong? I mean, did he deport him on the basis of a non-predicate offense? Well, I think we would agree that the immigration judge got the legal analysis wrong in this case. So does that render the deportation order invalid? Respectfully not, because there are two parts of the fundamental fairness analysis. First, the defendant has to show that there was a defect in that procedure that violated his due process rights, and we would agree that there was a defect in that procedure. But, secondly, that he was somehow prejudiced. And what these cases made clear is that if, in fact, a defendant was removable as charged or was not eligible for relief, then he cannot demonstrate prejudice. So you're saying you could look after the fact and say, well, actually, even though the IJ used the wrong rationale to remove him, had the IJ had all the evidence in front of him, he would have been able to remove him anyway. And you can do that even if it's years later. Correct. And that's exactly what happened in Gonzalez-Valerio. There was the notice to appear did not allege an aggravated ---- alleged a different aggravated felony. I think in that case the defendant had ---- Which case are you talking about? It's Gonzalez-Valerio, and I have the site here for the court. I have it. Thank you. Okay. And I believe in that case the ---- there were a couple different convictions, and they both occurred before the deportation. But the IJ judge was dealing with an NTA that alleged a conviction which ended up not being an aggravated felony. But in connection with the court's duty to evaluate prejudice in a subsequent collateral attack, the court was able to then say, well, were there other felony convictions that would have constituted aggravated felonies which, therefore, would have precluded the defendant from getting any relief, which in that case it did. Same is true in this case. And, in fact, this case is even stronger for the government because the NTA wasn't defective. It did allege that he had been convicted of an aggravated felony. It was just the legal reasoning that the immigration judge got wrong. So it's exactly what that prejudice requirement was meant to address. And I think, you know, when you're thinking in your mind about sort of this idea that maybe, you know, I know Ms. Hughes raised this, that the government had its chance at the IJ, and it's sort of looking for a second bite at the apple, that sort of depends on your context, I think, because this isn't a situation where, you know, the government was again seeking to remove Mr. Rodriguez-Hernandez at that initial hearing, but he came in illegally. You know, he committed a crime, and as a sort of sword, you know, to thwart the government's ability to convict him, you know, he is now attempting to rewrite history. He is attempting to say, I know that I stipulated for my plea agreement that I committed an attempted theft offense. I used a piece of metal to enter a locked car to take some cassette tapes. And we know under Gunty or Begunty that that is sufficient to constitute an attempted theft offense. He's now saying, even though I pled guilty, and that was a factual basis for my plea, the court shouldn't be allowed to consider that in evaluating whether I was prejudiced. And, you know, so I think it's not really the government attempting to have a second bite at the apple. You know, it's the defendant who's attempting to rewrite history. And I only have 30 seconds left, so I'll just sum up by noting that it's fair to do that. You know, Hernandez and Almazan talk about, you know, being able to use documents that the defendant stipulates to as a factual basis when doing the modified categorical approach, which applies in this case. And it makes sense to do that, right, because the defendant gets a benefit. In this case, the benefit in the defendant's original plea agreement was that he would not go to state prison. And that's indicated in the probation report. So he got a benefit from his plea, and he should be stuck with that. Thank you, Mr. Wright. Thank you. Ms. Hughes? You've got about a minute and a half left. Well, I'll address Gonzales-Velario and the rewriting of history. If Your Honors look at Gonzales-Velario and the other cases, the government cites a few district court cases and an unpublished case from here, from this Court, the Court goes back and says, okay, well, the issue is, did the alien demonstrate that he had a plausible ground to relief? He didn't have the opportunity to do that before the IJ. And so we're going to look back hypothetically and say, if he had asked for voluntary departure or 212C relief, what would have happened? And in each case, the Court says, either the alien would have had to disclose those convictions on the 212C application, or the government would have come forward and said, you can't have voluntary departure, you have all these convictions. That's why the situation where the issue is prejudice based on plausibility for relief is totally different, because we don't have to have a rehashing of what happened before the immigration court here. The government tried to meet its burden to demonstrate removability, and it failed. We know exactly what would have happened, so we don't have to go through that hypothetical process that we do in the other type of prejudice. Real quickly, regarding the waiver, Judge Fogel, I think the issue of deference, this Court has said that it indulges every reasonable presumption against waiver. And so I think indulging every reasonable presumption, combined with the government's failure to meet the burden, this Court shouldn't give deference. And one last quick point. The colloquy that counsel read, where the I.J. goes through and explains the right to appeal, this Court said in Paris Galan and in Lopez-Vazquez that understanding what an appeal is isn't necessarily enough. Just because the I.J. explains it and the alien understands that there is a right to appeal doesn't mean he understands the consequences that he's giving up in this particular situation. Thank you, Ms. Hughes. Thank you. Mr. Harrison, thank you, too. The case just argued is submitted. Good morning.
judges: Fogel, Silverman, Wardlaw